IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | |
|---|---|
| RICHARD D. KELLY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:23-cv-725–HEH |
| ) | |
| ALTRIA CLIENT SERVICES, LLC, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION
(Resolving Motions for Attorneys' Fees)

THIS MATTER is before the Court on the awarding of attorneys' fees. On March 26, 2025, this Court granted Defendant Altria Client Services, LLC ("Altria") and Deferred Profit-Sharing Plan for Salaried Employees' ("DPS Plan") (collectively, "Altria Defendants") Motion for Summary Judgment and Defendant Fidelity Workplace Services, LLC's ("Fidelity") Motion for Summary Judgment, and denied Plaintiff Richard D. Kelly's ("Plaintiff") Motion for Summary Judgment. Altria Defendants and Fidelity now move for the award of attorneys' fees. (ECF Nos. 121, 123.) The parties have filed memoranda in support of their positions, and the Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before it, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. Civ. R. 7(J).

## I. BACKGROUND

The factual dispute has been well documented by the Court in its previous opinion on summary judgment. (Summ. J. Mem. Op., ECF No. 114.) Plaintiff is a former employee of Altria and participated in the DPS Plan under § 1002(7) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). (*Id.* at 3.) The DPS Plan is sponsored by Altria and is an employee pension benefit plan under § 1002(2) of ERISA. (*Id.*) Fidelity operates the "Benefits Center" of the DPS Plan, which entails processing benefit exchanges requested by participants and other recordkeeping functions. (*Id.*) Altria and Fidelity contracted to provide "directed and ministerial recordkeeping services" for the DPS Plan as well as for other Altria-sponsored ERISA plans. (*Id.*) This relationship is memorialized in an Administrative Service Agreement ("ASA"). (*Id.*)

In October 2020, Plaintiff "decided he wanted to liquidate the funds from his DPS Plan account and put them into an investment account with Goldman Sachs." (*Id.*) Plaintiff then had several phone calls in October 2020 with Fidelity for guidance on this transaction. (*Id.*) On November 2, 2020, and November 5, 2020, Plaintiff called Fidelity to request a distribution of his assets in his DPS Plan account to his personal account at Goldman Sachs. (*Id.* at 4.) During these calls, Plaintiff asked Fidelity to conduct two (2) transactions: (1) liquidate his DPS Plan funds through "an in-kind distribution of the non-Altria stock" in his DPS Plan account, and (2) "a cash rollover of the remainder of [his] DPS Plan account balance relating to his Altria Group, Inc. stock." (*Id.* at 4.) Plaintiff informed Fidelity that he wanted the transaction completed as quickly as possible. (*Id.*

2

at 5.) Plaintiff contended that the timing of these requests was critical and strategic due to the upcoming election. (*Id.* at 10–11.) However, he asserted that Fidelity failed to timely process his requests, causing Plaintiff to miss out on an approximate gain of $259,433. (*Id.* at 11.)

Based on this sequence of events, Plaintiff brought the following claims in his Complaint: Count I—Enforce and Clarify Right to Benefits, 29 U.S.C. § 1132(a)(1)(B), against the Altria Defendants; Count II—Request for Full and Fair Review under ERISA, Request for Remand–in the Alternative, against the Altria Defendants; Count III—Breach of Fiduciary Duty under ERISA against the Altria Defendants and Fidelity; and Count IV—Claim for Statutory Penalties under ERISA, 29 U.S.C. § 1132(a)(1)(A), against Altria. (Compl. ¶¶ 49–73.)

On August 1, 2024, the Court granted in part Altria Defendants' Motion to Dismiss and denied Fidelity's Motion to Dismiss. (Mot. to Dismiss Mem. Order, ECF No. 64.) The Court dismissed without prejudice Count II of Plaintiff's complaint. (*Id.* at 8.) The Court denied the motion to dismiss for Counts I and III because Plaintiff contested the authenticity of the transcripts of his phone calls with Fidelity and, therefore, the Court could not consider them at that stage. (*Id.* at 7.) Additionally, the Court denied the motion to dismiss for Count IV because Altria Defendants did not provide Plaintiff with a copy of the Service Agreement. (*Id.* at 13.)

In its ruling on summary judgment on March 26, 2025, the Court found "that Altria Defendants did not abuse their discretion when the Altria Client Services Management Committee for Employee Benefits' ("MCEB") decision denied Plaintiff's

3

claim for benefits." (Summ. J. Mem. Op. at 15.) Additionally, the Court held "that Fidelity did not act as a fiduciary, and even if its conduct elevated its status to that of a fiduciary, Plaintiff has failed to show there was a material breach of this duty." (*Id.* at 33.) As a result, the Court granted Defendants' motions for summary judgment and denied Plaintiff's Motion for Summary Judgment. (*Id.* at 40.)

## II. LEGAL STANDARD

Whether attorneys' fees should be awarded in an ERISA action is completely within the discretion of the district court. ERISA § 502(g), 29 U.S.C. § 1132(g); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1029 (4th Cir. 1993). Once a court determines that a litigant in an ERISA case has achieved "some degree of success on the merits," the court applies the guidelines identified by the Fourth Circuit in *Quesinberry* to determine whether to award attorneys' fees to an eligible party. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citing *Quesinberry*, 987 at 1029). Accordingly, the district court considers the following five (5) factors when determining the appropriateness of attorneys' fees under ERISA:

> (1) degree of opposing parties' culpability or bad faith;
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Id.* (citing *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1217–18 (4th Cir. 1990)).

If a court determines that attorneys' fees should be awarded, it then considers what amount of attorneys' fees and costs are reasonable and appropriate. The court evaluates the reasonableness of Defendants' request in a three (3) step process. First, the court must determine the "lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Twelve (12) factors—referred to as the *Johnson* factors—guide the court's determination of what constitutes a reasonable number of hours and their rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (quoting *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). After calculating the appropriate lodestar figure, a court "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* (quoting *Grissom*, 549 F.3d at 321). And finally, the court then "awards some percentage of the remaining amount, depending on the degree of success." *Id.*

## III. DISCUSSION

### A. Altria Attorneys' Fees

Altria Defendants request an award of $124,045 for attorneys' fees incurred in connection with discovery that Plaintiff initiated with respect to Counts I and III and their motion for summary judgment with respect to Counts I and III. (Altria Defs.' Mem. in Supp. at 2, ECF No. 122.) Altria Defendants are not requesting attorneys' fees for work completed with respect to Count IV. Altria Defendants are represented by Hunton Andrews Kurth LLP ("Hunton"). Altria Defendants argue that they are entitled to compensation "for their attorneys' fees that would have been avoided had [Plaintiff] been straightforward about the transcripts on the motion to dismiss." (*Id.*) Due to Plaintiff's failure to listen to the provided recordings—provided four (4) months before Plaintiff sued—prior to the motion to dismiss hearing on April 8, 2024, Altria Defendants were forced to expend hundreds of additional hours of investigation, drafting, and argument, resulting in various motions and additional discovery. (*Id.* at 4.) Altria Defendants assert that the Court should award them attorneys' fees because their request is reasonable under the circumstances and in light of the five (5) *Quesinberry* factors. (*Id.* at 6); *see Quesinberry*, 987 F.2d at 1029 (citing *Reinking*, 910 F.2d at 1217–18).

First, Altria Defendants argue that Plaintiff was culpable in protracting the litigation for Counts I and III past the motion to dismiss stage by neglecting to authenticate the transcripts of the calls with Fidelity. (Altria Defs.' Mem. in Supp. at 6.) Altria Defendants claim that Plaintiff "lacked a good faith basis to dispute the accuracy of the transcripts" because Plaintiff possessed the November 2, 2020, recordings months

6

before he sued. (*Id.*) Altria Defendants also assert that Plaintiff has no justification for not listening to any of the call recordings. (*Id.*) Therefore, Altria Defendants argue that the first *Quesinberry* factor favors them. (*Id.*) Second, Altria Defendants assert that Plaintiff has "ample means to pay [their] requested fees," and therefore, this factor is also in their favor. (*Id.* at 7.) Third, Altria Defendants argue that a fee award would deter only bad faith denials of authenticity and inconsistent positions throughout different stages of the claims review process to protract litigation. (*Id.*) Thus, Altria Defendants argue this factor favors them. (*Id.*) Next, Altria Defendants contend that the fourth factor does not sway either way because "[t]his case was a personal campaign for [Plaintiff]," and "[a]ny award would not have benefitted other participants." (*Id.*) Additionally, there were "no novel legal issues at play." (*Id.* at 8.) Fifth and finally, Altria Defendants argue that had Plaintiff's position on whether the transcripts had been accurately transcribed been consistent, the case would not have passed the motion to dismiss stage and, therefore, this factor also weighs in their favor. (*Id.*) Thus, Altria Defendants assert that that Court should award them attorneys' fees because they are appropriate under ERISA.

Altria Defendants also assert that their requested fees are reasonable under the "lodestar method" and considering the *Johnson* factors. (Altria Defs.' Mem. in Supp. at 9–10); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (applying the lodestar method); *McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013) (relying on the lodestar method, with substantial reliance on the *Johnson* factors). Altria Defendants highlight that other courts in the Richmond Division of the Eastern District of Virginia have approved rates between $600 and $690 per hour for attorneys (typically partners)

with twenty (20) or more years of experience and up to $400 per hour for attorneys (typically associates) with fewer years of experience. (Altria Defs.' Mem. in Supp. at 10–11); *see SS Richmond LLC v. Harrison*, No. 3:22-cv-405, 2023 WL 7646505, at *7 (E.D. Va. Nov. 14, 2023) (approving $650 for partners and $400 for associates); *Haney v. Genworth Life Ins. Co.*, No. 3:22-cv-55, 2023 WL 175406, at *9 (E.D. Va. Jan. 12, 2023) (approving $600 for partners, $400 for associates and $150 for paralegals); *Bethune-Hill v. Va. State Bd. of Elections*, No. 3:14-cv-852, 2020 WL 5577824, at *10 (E.D. Va. Sep. 17, 2020) (approving $750 for partners and $410 for associates). Here, reduced rates for Hunton counsel range from $150 for paralegals, $350 for associates, and $600 for partners.[1] (Altria Defs.' Mem. in Supp. at 11.) Altria Defendants are seeking a total award of $124,045 in attorneys' fees: $4,950 for 33 hours of Ms. Meharg's time (Paralegal); $49,035 for 140.1 hours of Mr. Chumbley's time (Associate); $60,060 for 100.1 hours of Mr. Shelbelskie's time (Partner); and $10,000 for preparing the fee application. (Ex. 4 at 10–20, ECF No. 122-4.)

Plaintiff opposes awarding attorneys' fees to Altria Defendants primarily contending that they have not met their burden of showing that they are entitled to fees under ERISA. (Pl.'s Resp. in Opp'n at 17, ECF No. 131.) Plaintiff argues that the transcripts Altria provided during the administrative process were "facially incomplete." (*Id.*) Plaintiff also asserts that "he could not be sure at the motion to dismiss stage

---

[1] Altria Defendants note that these rates are "substantially lower than the attorneys' and paralegal's actual rates, but the Altria Defendants seek only the reduced rates in this petition." (Altria Defs.' Mem. in Supp. at 11.)

8

whether those same transcripts were truly accurate for use as actual competent evidence" and "would need to further investigate the validity and accuracy of those—and other— transcripts." (*Id.*) Additionally, Plaintiff argues that the transcripts Altria Defendants submitted were missing the relevant Fidelity calls on November 9 and 10. (*Id.* at 3.) Because Plaintiff was "fully transparent about the basis for his objections to the transcripts," and had a "genuine belief that [he] would ultimately prevail on all of them," he argues that the first *Quesinberry* factor favors him. (*Id.* at 18–19.)

Second, Plaintiff "does not dispute that he can pay the fees;" however, he claims this is a "non-issue, especially since he is the plaintiff." (*Id.* at 26); *see Critelli v. Fidelity Nat. Title Ins. Co. of New York*, 554 F. Supp.2d 360, 367 (E.D.N.Y. 2008) ("[T]he fact that a party can satisfy an award of attorney's fees is not dispositive."); *Byrner v. El DuPont de Nemours & Co.*, 950 F. Supp.2d. 840, 847–48 (E.D. Va. 2013) ("While this factor alone ordinarily cannot support an award of attorneys' fees, it weighs in favor of such an award in this case."). Third, Plaintiff argues that the deterrence factor "weighs heavily" in his favor because other courts have held that attorneys' fees are disfavored when they would be charged against ERISA plaintiffs. *See Corder v. Howard Johnson & Co.*, 53 F.3d 225, 231 (9th Cir. 1994) (noting that the Ninth Circuit frequently expressed their disfavor of awards of attorneys' fees against individual ERISA plaintiffs); *Jones v. O'Higgins*, 736 F.Supp. 1243, 1245 (S.D.N.Y 1990) (holding that a "favorable slant toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith.") Plaintiff contends that since courts disfavor granting fees to prevailing defendants, the Court should decline to do so here. (Pl.'s Resp. in Opp'n at 26.)

Fourth, Plaintiff argues that awarding attorneys' fees here is "inconsistent with the remedial purposes of ERISA and would chill future claimants and *plaintiff's attorneys* from pursuing ERISA claims." (*Id.* at 1 (emphasis in original).) Therefore, Plaintiff believes he should not be required to pay Altria Defendants' attorneys' fees. (*Id.*) Fifth, Plaintiff argues that the last factor—the relative merits of the parties' positions—favors him because "[t]his factor only favors a fee award to the defendant when plaintiff's claims are so 'disproportionately meritless' that they cannot be justified." (*Id.* at 27 (quoting *Gibbs v. Gibbs*, 210 F.3d 491, 505 (2d. Cir. 2000).) Thus, Plaintiff contends that "the balance of the *Quesinberry* factors [. . .] weigh *against* any award of attorney's fees for the Altria Defendants." (Pl.'s Resp. in Opp'n at 27 (emphasis in original).)

Next, Plaintiff contests the reasonableness of Altria Defendants' purported hours. (*Id.* at 28.) Plaintiff argues that Altria Defendants did not "properly support[]" their request for hourly rates. (*Id.*); *see Grissom*, 549 F.3d at 322–23 (holding that evidence of attorneys' rates solely within the firm was insufficient to support the award). Moreover, Plaintiff states that the 96.8 hours the two (2) attorneys spent on drafting and revising three (3) summary judgment briefs was excessive because counsel should have already been familiar with the subject matter and case law. (Pl.'s Resp. in Opp'n at 28.) Additionally, Plaintiff argues that the fee requests should be reduced because eleven (11) of Mr. Chumbley's entries reflect clerical tasks. (*Id.* at 29); *see Two Men & A Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015) (stating that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.") (quoting *Missouri v. Jenkins by Agyei*, 491 U.S. 274 n.10 (1989)).

10

The Court first determines whether Altria Defendants should be awarded attorneys' fees under ERISA. As the United States Supreme Court has recently noted, courts have the authority to ward off "meritless litigation" under ERISA through cost-shifting. *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1032 (2025). And contrary to Plaintiff's position, plaintiffs are not afforded special deference when the Court determines whether a defendant should receive attorneys' fees. *See id.* ("[T]he court in its discretion may allow a reasonable attorney's fee and costs of action to either party" (citing § 1132(g)(1))); *Est. of Shockley v. Alyeska Pipeline Serv. Co.*, 130 F.3d 403, 408 (9th Cir. 1997) (holding that "the playing field is level" regarding attorneys' fees for either the plaintiff or defendant).

The Court recognizes that Plaintiff did not have access to the November 9 transcript, however, the transcript was not relied upon by the MCEB, which denied Plaintiff's claim for benefits. Moreover, it does not excuse Plaintiff's denial of authenticity of the November 2 and 5 transcripts. Accordingly, Plaintiff bears some culpability in unnecessarily protracting the length of litigation because he had access to the recordings of the November 2 calls prior to initiating the suit and he affirmed the transcripts' accuracy in the earlier administrative appeal. (*See* Ex. 1, ECF No. 122-1 (emailing Plaintiff November 2 audio recordings.) Therefore, the first *Quesinberry* factor slightly favors Altria Defendants.

The second factor favors Altria Defendants since both parties agree that Plaintiff is able to satisfy the award. The Court recognizes, however, that "this factor *alone*

11

ordinarily cannot support an award of attorneys' fees." *Bryner v. E.I. DuPont de Nemours & Co.*, 950 F. Supp. 2d 840 (E.D. Va. 2013) (emphasis added).

For the third factor, awarding Altria Defendants' attorneys' fees may chill future plaintiffs from bringing ERISA claims; however, this would serve only to ward off "meritless litigation." *See Cunningham*, 145 S. Ct. at 1032. Here, the cost shifting serves not to prevent legitimate claims from being brought, but instead to deter illegitimate ones. (*See* Altria Defs.' Reply at 5.) Contrary to Plaintiff's contention that awarding fees might chill plaintiffs' counsels, ERISA has long permitted "either party" to recoup attorneys' fees. 29 U.S.C. § 1132(g). Here, because the Court granted the motions for summary judgment based primarily on those transcripts, a majority of this prolonged litigation could have been avoided had Plaintiff reviewed and authenticated the transcripts. (*See* Altria Defs.' Mem. in Supp. at 8.) Additionally, Altria Defendants notably tailored their request for attorneys' fees to work that was related only to Counts I and III after the motion to dismiss stage. (Ex. 4 ¶ 7.) Therefore, balancing the *Quesinberry* factors, the Court finds that the request for attorneys' fees may be awarded under ERISA.

The Court must now consider whether Hunton's hourly rates are reasonable. *See Robinson*, 560 F.3d at 243; *Johnson*, 488 F.2d at 717–19. Although there were some complex issues of law, this case was not highly complex and was grounded in a straight-forward administrative record. Indeed, as Altria Defendants pointed out, the case revolved around the representations made to Plaintiff as reflected in the transcripts. Counts I and III did not require the Court to delve into novel questions of law. Additionally, in his Complaint, Plaintiff requested the following amounts from

12

Defendants: $259,433 in losses suffered, $45,100 in statutory penalties, pre- and post-judgment interest, costs, attorneys' fees, and all other equitable relief. (Compl. ¶¶ 20, 73, ECF No. 1.) Altria Defendants' fee request would amount to nearly half of Plaintiff's requested relief.

In addition to the Court's knowledge of the case and counsels' participation throughout the case, Altria Defendants filed evidence of Hunton's actual billing practice (Ex. A, ECF No. 122-4) and a Declaration from Mr. Shebelskie attesting to the reasonableness of Hunton's hourly rates of $600 and $400 for the two (2) attorneys (Ex. 4, ECF No. 122-4). Altria Defendants also provided adequate evidence that their requested rates are well within the prevailing market rates of attorneys in Richmond. (*See* Altria Defs.' Mem. in Supp. at 10–11); *e.g., SS Richmond LLC*, 2023 WL 7646505, at *7 (approving $650 for partners and $400 for associates). The Court agrees that Hunton's hourly rates are reasonable considering the experience and skill of counsel and the prevailing rate of other attorneys in Richmond. However, Altria Defendants included no support to justify an additional blanket $10,000 for preparing their fee petition. Therefore, considering the *Johnson* factors, the Court finds that Hunton's hourly rates are reasonable but will reduce the requested total by $10,000.

Next, the Court calculates a reasonable number of hours expended by excluding "any hours that are 'excessive, redundant, or otherwise unnecessary,'" "subtract[ing] the fees incurred for unsuccessful, unrelated claims," and "award[ing] some percentage of the remaining amount, depending on the degree of success enjoyed." *SS Richmond LLC*, 2023 WL 7646505, at *8 (quoting *Coward v. Robinson*, 2017 WL 5195868, at *2 (E.D.

13

Va. Nov. 9, 2017)); *Robinson*, 560 F.3d at 244. The Court will make the following adjustments to Altria Defendants' hours requested. First, the Court will exclude all hours performed by the paralegal, Ms. Meharg, because "purely clerical tasks are ordinarily a part of a law office's overhead," and "should not be compensated for at all." *See Two Men*, 128 F. Supp. 3d at 929. Thus, the Court will deduct $4,950 from the requested total. Second, the Court will deduct fees by Mr. Shebelskie and Mr. Chumbly related to the discovery dispute on October 21, 2024, because Altria Defendants were "unsuccessful" on most of the issues. *See Robinson*, 560 F.3d at 244. Accordingly, the Court will deduct $23,280 from the requested total. Third, the Court will exclude Mr. Chumbly's entries for reviewing and analyzing the Court's December 4, 2024, communication on motions to seal. Consequently, the Court will deduct $1,225 from the requested total. The Court has reviewed the remaining entries and find that the rates and hours are reasonable. Finally, the Court will exercise its discretion to reduce the requested hours by an additional ten (10) percent based on Altria Defendants' degree of success. *See Grissom*, 549 F.3d at 321. Therefore, the Court will award Defendants a total of $76,131 in attorneys' fees.

### B. Fidelity Attorneys' Fees

Fidelity requests an award of $98,090[2] for attorneys' fees incurred in connection with the underlying legal matter and preparing the fees application. (Fidelity's Mem. in Supp., ECF No. 124.) Fidelity is represented by Littler Mendelson P.C. ("Littler"). Here,

---

[2] Fidelity claimed their total request was $96,340 for attorneys' fees; however, based on the Court's calculation, Fidelity appears to have mistakenly excluded Ms. Jones' work.

Littler's reduced rates range from $150 for paralegals, $350 for associates, $400 for senior counsel, $500 for junior shareholders, and $600 for senior shareholders.[3] (*Id.* at 10.) Accordingly, Fidelity seeks compensation for: $180 for 1.2 hours of Ms. Columbo's time (Paralegal); $1,750 for 5 hours of Ms. Jones' time (Associate); $11,700 for 23.4 hours of Mr. Berg's time; $27,900 for 62 hours of Mr. Silver's time (Shareholder); $46,560 for 77.6 hours of Mr. Field's time (Shareholder); and $10,000 for preparing the fee application. (Ex. A, ECF No. 124-1.)

Although Fidelity produced a declaration from Mr. Field stating the requested attorneys' fees in this case, they failed to provide an itemized list detailing the work done. Because Fidelity did not submit to the Court an enumerated breakdown of hours worked, the Court cannot award them attorneys' fees at this time. *See SS Richmond LLC*, 2023 WL 7646505, at *8 (holding that "[t]he burden rests on the applicant to maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." (quoting *Coward v. Robinson*, 2017 WL 5195868, at *2)). However, the Court will give Fidelity leave to renew their motion for attorneys' fees to file more particularized documentation.

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Altria Defendants' Motion (ECF No. 121) and award attorneys' fees in the amount of $76,131 but deny Fidelity's Motion (ECF No. 123) with leave to file more particularized documentation. The sum of

---

[3] Fidelity notes that it is seeking "an almost 50% reduction" of their actual fees. (Fidelity Mem. in Supp. at 10.)

Defendants' awards will be subject to statutory post-judgment interest pursuant to 28 U.S.C. § 1961.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: August 11, 2025
Richmond, Virginia